# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PELE SMITH, | ) | CASE NO.1:16CV2248 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| CITY OF LORAIN, ET AL., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants City of Lorain, Chief Cel Rivera and Officers Michael Gidich, Timothy Thompson, Miguel Salgado and Zachary Ferenec's (collectively, "Defendants") Motion for Summary Judgment. For the following reasons, the Court grants Defendants' Motion in part and denies it in part.

This case arises out of the September 4, 2014 arrest of Plaintiff Pele Smith ("Smith"). Smith alleges § 1983 Claims for Excessive Force in Violation of the Fourth Amendment, False/Wrongful Arrest/Imprisonment in Violation of the Fourth and Fourteenth Amendments and City Customs and Policies Causing Constitutional Violations. Smith also alleges state-law claims for Gross Negligence and Negligent Retention and/or Supervising.

## Background Facts

According to Smith's Complaint, Defendant Officers Timothy Thompson ("Thompson") and Michael Gidich ("Gidich") were on patrol in the area of East 34th Street in the City of Lorain, Ohio (the "City") on September 4, 2014. Compl. ¶¶ 19-20. Thompson and Gidich decided to stop Smith while Smith was walking along East 34th Street. Compl. ¶¶ 19, 21. There is some disputed evidence that the officers had received an anonymous tip that Smith was dealing drugs out of his home, which was in the area. Smith complied and walked over to the vehicle in a non-aggressive manner, yet the officers violently grabbed Smith and took him to the ground. Compl. ¶¶ 22-24. Gidich contends that he witnessed Smith swallowing drugs in an effort to conceal them, which is why Smith was taken to the ground. Once on the ground, the officers handcuffed Smith and told him to sit on the curb near their police car, which Smith did. Compl. ¶¶ 25-26.

Shortly thereafter, Defendant Officer Zachary Ferenec ("Ferenec") arrived on the scene and approached Smith, Thompson and Gidich. Compl. ¶ 26. Ferenec's police car was equipped with a dash cam that captured footage of the rest of the events. Around the same time, Defendant Officer Miguel Salgado ("Salgado") also arrived on the scene. Compl. ¶ 32. Ferenec, Thompson and Gidich raised Smith to his feet and Ferenec walked Smith toward Ferenec's police car. Compl. ¶ 27. When Ferenec and Smith got to the car, Ferenec, without provocation, slammed Smith's chin into the windshield of the car with so much force that the windshield shattered. Compl. ¶ 28. According to Ferenec, Smith was resisting Ferenec, which is why the officer felt it was necessary to use force to get Smith to the car.

Smith also alleges that the City and Police Chief Cel Rivera ("Rivera") implemented customs and policies causing officers to violate citizens' Fourth and Fourteenth Amendment

rights. Compl. ¶ 51. In 2012, the U.S. Department of Justice ("DOJ") investigated the City of Lorain Police Department ("LPD") as a result of allegations of excessive force and sexual misconduct committed by LPD officers. The DOJ found that at the time of their investigation (2012), there was not a continuing pattern of excessive force, but that such a pattern had existed in previous years. The DOJ issued recommendations to the City and LPD in order to prevent such a pattern from re-emerging.

In connection with his September 4, 2014 arrest, Smith pled guilty to Resisting Arrest, Tampering with Evidence and Obstructing Official Business.

Smith alleges: (1) Excessive Force in Violation of the Fourth Amendment against Ferenec, Thompson and Gidich; (2) False/Wrongful Arrest/Imprisonment in Violation of the Fourth and Fourteenth Amendments against Ferenec, Thompson and Gidich; (3) Customs and Policies Causing Constitutional Violations against the City and Rivera; (4) Gross Negligence against Ferenec, Thompson, Gidich and Salgado and (5) Negligent Retention and/or Supervising against the City and Rivera.

**<u>Defendants' Motion</u>**

Defendants urge the Court to consider the Supreme Court case *Heck v. Humphrey*, 512 U.S. 477 (1994), which Defendants contend bars Smith's § 1983 Excessive Force and False/Wrongful Arrest/Imprisonment claims because allowing recovery on these grounds would imply the invalidity of Smith's Resisting Arrest conviction.

Even if *Heck* does not bar Smith's Excessive Force Claim, Defendants contend that the officers are all entitled to qualified immunity on all counts. Furthermore, Ferenec's use of force was reasonable and the Court should give a high level of deference to the officers'

determinations at the scene. Lastly, Smith has no claim against Salgado because he neither used force nor failed to intervene. Salgado did not have enough time to intervene.

Defendants also contend that Smith does not have a basis for his *Monell* Claim against the City and Rivera because Smith's constitutional rights were not violated. Furthermore, his allegations are based on conclusory statements that have not been backed up by evidence. With regard to the DOJ investigation report ("DOJ Report") that Smith references, Defendants contend that the report is not admissible as evidence under Rule 56.

Finally, Defendants argue that the City is immune from the claim of Negligent Retention and/or Supervision because the injury to Smith occurred in connection with the City's performance of a governmental or proprietary function. Even if the City is not immune from this claim, Defendants contend that it has not been sufficiently alleged by Smith.

**Plaintiff's Response**

Smith contends that his first claim for Excessive Force is not barred by *Heck* because Ferenec used excessive force on Smith *after* Smith was already arrested. By the time Ferenec arrived on the scene, Smith was already handcuffed and subdued. Therefore, Smith's Excessive Force claim would not imply the invalidity of Smith's Resisting Arrest conviction.

Smith also argues that he has sufficiently alleged his claim against the City and Rivera for Customs and Policies Causing Constitutional Violations. Smith urges the Court to consider the DOJ Report as evidence. Furthermore, Smith contends that the officers' depositions show that LPD did not make appropriate changes in response to the DOJ Report.

Furthermore, the officers are not entitled to immunity from Smith's Gross Negligence claim because the officers acted with malicious purpose, in bad faith or in a wanton or

4

reckless manner. The officers consistently overreacted to Smith's actions and Smith was compliant with their demands.

Lastly, Smith argues that the DOJ Report also proves that the City and Rivera were deliberately indifferent to the risk of constitutional violations and thus, Smith's claim for Negligent Retention and/or Supervision has been sufficiently alleged. The City and Rivera failed to make significant changes to LPD policy after receiving the DOJ Report, thus contributing to an ongoing policy of officers, including the Defendant officers, violating citizens' constitutional rights. Therefore, Smith argues that Defendants' Motion for Summary Judgment should be denied.

## **LAW AND ARGUMENT**

### **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Diary*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079,

1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Does *Heck v. Humphrey* bar Smith's Excessive Force claims?**

Defendants contend that *Heck* bars Smith's Excessive Force claim because proving that the officers used excessive force would necessarily invalidate Smith's resisting arrest conviction. In *Heck*, a prisoner alleged that prosecutors and investigators had engaged in unlawful investigation, destroyed exculpatory evidence and used illegal procedures in the plaintiff's trial, leading to the plaintiff's conviction. 512 U.S. at 479. The Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus... when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87.  Conversely, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id.* at 487.

In this Circuit, "if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit."  *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014).  The *Hayward* court noted that excessive force both contradicts an element of the Ohio resisting arrest statute and is an affirmative defense to the charge of resisting arrest.  *Id.* at 610-11.  However, the court also noted that "*Heck* does not bar § 1983 suits alleging *post-arrest* excessive force" (emphasis original).  *Id.* at 611.  "Therefore, a court must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct to determine whether 'the alleged excessive force is used *after* the suspect ceases resisting arrest.'"  *Id.* at 612.

In this case, Smith alleges excessive force against Ferenec, Thompson and Gidich.  Viewing the facts in the light most favorable to Smith, as the nonmovant, a reasonable jury could find that Ferenec's alleged use of excessive force occurred after Smith's arrest.  Smith alleges that he was already handcuffed and subdued by the time Ferenec arrived on the scene.  Compl. ¶¶ 25-27.  Smith reiterates the same facts in his deposition.  Smith Dep. 44:10-46:5.  Similarly, while the footage from Ferenec's dash camera is unclear, a reasonable juror could find that the video shows that Smith was not resisting arrest by the time of Ferenec's arrival and that Ferenec used excessive force on Smith.  Since there are genuine issues of material

7

fact, the Court denies summary judgment to Ferenec on Smith's Excessive Force claim.

Smith also asserts claims for Excessive Force against Thompson and Gidich. "It is well-settled that to constitute an 'arrest,' all that is required 'is some act by the officer which indicates his intention to detain or to take the person into custody, thereby subjecting that person to the actual control and will of the officer.'" *U.S. v. Randle*, 67 F.Supp.2d 734, 738 (E.D.Mich. 1999) (quoting *Commonwealth of Pennsylvania v. Brown*, 230 Pa.Super. 214, 218 (1974)). Smith alleges in his Complaint that Thompson and Gidich ordered Smith to approach their vehicle. Compl. ¶ 21. After Smith complied, Thompson and Gidich "exited their vehicle and without provocation grabbed Plaintiff and violently took him to the ground," then they handcuffed Smith and instructed him to sit on the curb. Compl. ¶¶ 24-25. Even in the light most favorable to Smith, the alleged use of excessive force occurred before the officers "indicat[ed] [their] intention to detain" Smith; they had not attempted to handcuff him yet and had merely called him over to their vehicle. *Randle*, 67 F.Supp.2d at 738. Therefore, a reasonable jury could not find that Thompson and Gidich's use of force occurred post-arrest.

Smith pled guilty to resisting arrest. Finding that Thompson and Gidich used excessive force on Smith before his arrest would imply the invalidity of Smith's underlying criminal conviction of resisting arrest. Under Sixth Circuit precedent, excessive force both contradicts an element of the Ohio resisting arrest statute and is an affirmative defense to resisting arrest. *Hayward*, 759 F.3d at 610-11. Therefore, the Court grants summary judgment to Thompson and Gidich on Smith's Excessive Force claim since it is barred by *Heck*.

In his deposition, Smith attempts to assert additional allegations against Gidich.

Specifically, Smith alleges that Gidich choked him after Gidich had already attempted to handcuff him. Smith Dep. 26:2-23. However, Smith fails to assert these allegations in his Complaint. Therefore, the Court nonetheless holds that Smith's Excessive Force claims against Thompson and Gidich are barred by *Heck*.

**Is Ferenec entitled to qualified immunity on Smith's Excessive Force claim?**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "is an immunity from suit rather than a mere defense to liability," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), and is a legal question that must be determined early in the proceedings. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

"Qualified immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow*, 457 U.S. at 815. Defendants bear the initial burden of coming forward with facts suggesting that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to plaintiff to show that defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490-91 (6th Cir. 2003).

In *Saucier v. Katz*, the Supreme Court established a two-prong test for evaluating whether defendants are entitled to qualified immunity in the context of § 1983 Excessive Force claims. First, the court must evaluate "whether a constitutional right would have been

9

violated on the facts alleged." *Saucier*, 533 U.S. at 200. Next, the court must consider whether the right is clearly established. *Id.* "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Smith alleges that Ferenec violated his Fourth Amendment rights when he used excessive force against Smith. At the time, Smith alleges that he was handcuffed and was not resisting or attempting to escape. "The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). On these facts as alleged, Ferenec's slamming Smith's chin into the windshield would thus be a violation of Smith's constitutional rights. Therefore, the first prong of the *Saucier* test weighs against qualified immunity.

Turning to the second prong, the Court finds that Ferenec's conduct violated clearly established law. By September 2014, the right of a suspect who is not actively resisting to be free from post-arrest excessive force was clearly established. *See Meirthew v. Amore*, 417 Fed. Appx. 494, 497 (6th Cir. 2011) (upholding the denial of qualified immunity for an officer who took a suspect to the ground while the suspect was wearing handcuffs, resulting in injury); *Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187 (6th Cir. Jan. 31, 2000) (upholding the denial of qualified immunity for an officer who shot a suspect after a physical altercation between the suspect and the officer had concluded) and *Michaels v. City of Vermillion*, 539 F.Supp.2d 975, 989-90 (N.D.Ohio 2008) (denying qualified immunity to an officer who repeatedly tased a suspect after arresting and handcuffing him and after the

suspect was no longer resisting).

Defendants argue that even if Ferenec's conduct violated Smith's clearly established constitutional rights, Ferenec is entitled to qualified immunity because his misestimation of the amount of force necessary was a reasonable mistake. In determining whether an officer's actions are reasonable, the court must consider "the totality of the circumstances, including the severity of the crime at issue, whether the subject pose[d] an immediate threat to the safety of the officers or others, and whether [the subject was] actively resisting or attempting to evade arrest by flight. This analysis 'contains a built-in measure of deference to the officer's on-the-spot judgment.'" *Meirthew*, 417 Fed. Appx. at 497.

Considering the facts in a light most favorable to Smith as the nonmovant, the Court finds that Ferenec is not entitled to qualified immunity. First, considering the severity of the alleged crime, this Court has held that resisting arrest is "not particularly severe." *Michaels*, 539 F.Supp.2d at 986. Similarly, "the suspected crime of drug activity was not an intrinsically violent one," and therefore, the Court finds that this factor weighs in favor of Smith. *Irvin v. City of Shaker Heights*, 809 F.Supp.2d 719, 732 (N.D.Ohio 2011). Second, the officers did not discover any weapons on Smith's person when they patted him down before handing him over to Ferenec, and by the time Ferenec used force on Smith, he was handcuffed. Therefore, it is unlikely that Smith posed an immediate threat to the safety of the officers or anyone else. Lastly, Smith was already handcuffed and the video evidence is unclear as to whether Smith was resisting. There is a genuine issue of material fact as to whether Smith was attempting to evade arrest at the time and the Court finds that this precludes summary judgment for Ferenec on Smith's Excessive Force claim.

**Does *Heck v. Humphrey* bar Smith's False/Wrongful Arrest/Imprisonment claims?**

In order to establish a § 1983 claim for wrongful arrest, the plaintiff "must prove that the arresting officers lacked probable cause to believe that the suspect had committed the charged crime." *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). Under Ohio law, an arrest is considered lawful only if probable cause exists to support the arrest. *Hayward*, 759 F.3d at 609-10. The lawfulness of the arrest is an element of the Ohio resisting arrest statute. *Id.* at 609.

In order to recover under § 1983, Smith must prove that the officers lacked probable cause to arrest him and thus, that the arrest was not lawful. Smith's resisting arrest conviction relies upon the lawfulness of the arrest, and Smith's recovery under § 1983 would require Smith to invalidate the lawfulness of the arrest. Therefore, the Court holds that Smith's False/Wrongful Arrest/Imprisonment claims are barred by *Heck* and thus grants Defendants summary judgment on Smith's False/Wrongful Arrest/Imprisonment claims.

**Is the DOJ Report admissible as evidence?**

Defendants argue that the DOJ Report is not admissible under Federal Rule of Civil Procedure 56 because the it would not be admissible as evidence in trial. However, under Federal Rule of Evidence 902(1), public documents that bear the seal of a department or agency of the United States and a signature executing the document are self-authenticating. The DOJ Report contains both. Therefore, the Court finds that the DOJ Report is self-authenticating under Rule 902(1).

Additionally, investigative reports are admissible under Federal Rule of Evidence 803(8). Rule 803(8) provides that the following is not excluded under the hearsay rule: "A

record or statement of a public office if: (A) it sets out... (iii) in a civil case... factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii) and (B) (formerly Rule 803(8)(c)). "To determine whether a report is trustworthy, courts consider the following factors: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009) (citing *Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc.*, 959 F.2d 606, 616-17 (6th Cir. 1992)). Rule 803(8)(B) puts the burden on Defendants to show that the documents are not trustworthy.

Here, Defendants offer no evidence or argument on the trustworthiness of the DOJ Report. Furthermore, nothing in the DOJ Report demonstrates issues with the timeliness of the report, the experience of the investigators or motivational problems. Therefore, the Court finds that the DOJ Report is admissible as evidence under Rule 56, but this ruling does not foreclose Defendants from challenging as inadmissible certain aspects of the DOJ Report either by motion in limine or at trial.

**Has Smith presented sufficient evidence to support his § 1983 Claim for Customs and Policies Causing Constitutional Violations?**

Plaintiff alleges that the City and Rivera failed to adequately and properly supervise the Defendant officers, ratified the conduct of the Defendant officers or implemented customs and policies which violate the Fourth and Fourteenth Amendments. Compl. ¶¶ 49-51. "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735

13

F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipality may not be sued under § 1983 on a theory of *respondeat superior*. *Id.*

The existence of an illegal policy or custom may be established by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* In order to prevail on a failure-to-train-and-supervise claim, the plaintiff must show "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id* "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Id.*

Defendants claim that Smith has presented inadequate evidence to support these *Monell* claims. However, Smith cites the DOJ Report as evidence of these claims. While the DOJ Report did not find a present pattern of excessive force in the LPD, it did find that one had existed in previous years. The DOJ Report also gives several recommendations to remedy what it refers to as "inadequate training." Furthermore, the DOJ Report states that LPD had not properly addressed excessive force claims in the past and that LPD's current policies still failed to comport with legal standards on the use of excessive force in certain respects. On these facts, a reasonable jury could find that the City and Rivera instituted policies and customs causing constitutional violations. Therefore, the Court finds that this

14

precludes summary judgment for Defendants on Smith's *Monell* claim.

**<u>Are the Defendant officers entitled to statutory immunity from Smith's Gross Negligence claim?</u>**

Under Ohio law, Gross Negligence is defined as "failure to exercise any or very slight care" or "failure to exercise even that care which a careless person would use." *Thompson Elec., Inc. v. Bank One, Akron, N.A.*, 37 Ohio St.3d 259, 265 (1988). Immunity is implied "[i]n a civil action brought against... an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.03(A) (2018). An employee of a political subdivision is immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6) (2018).

Smith asserts that the Defendant officers are not immune from liability for Gross Negligence because they acted maliciously, in bad faith, or wantonly and recklessly. Ohio courts define "malice" as "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987). "Bad faith" is defined as "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. McDonald*, 144 Ohio App.3d 301 (5th Dist. 2001). Wanton misconduct is defined as "the failure to exercise any care toward those to whom a duty of care

15

is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 388 (2012). Lastly, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

In his Complaint, Smith alleges that Thompson and Gidich "exited their vehicle and without provocation grabbed Plaintiff and violently took him to the ground." Compl. ¶ 24. Smith testified in his deposition that Gidich put him in a choke hold and wrestled him to the ground while Thompson stood by the police car. Smith Dep. 26:11-28:20. However, Gidich testified that both he and Thompson were involved in the struggle with Smith and that Thompson never put Smith in a headlock. Gidich Dep. 33:9-22, 42:14-16. Thompson also testified that he and Gidich were both involved in the struggle, but stated that he was the primary officer who took Smith to the ground. Thompson Dep. 33:18-35:7. Thompson also stated that he used a headlock technique to bring Smith to the ground. *Id.* Both officers stated that Gidich saw Smith swallow drugs, which is why the officers took Smith to the ground. Viewing the facts in a light most favorable to the nonmovant, there is a question of material fact as to whether Thompson and Gidich acted maliciously, in bad faith or willfully and recklessly, and Court denies summary judgment to Thompson and Gidich on Smith's Gross Negligence claims.

Smith also alleges that Ferenec committed Gross Negligence when he slammed Smith's chin into the windshield. Compl. ¶¶ 28, 54. In his deposition, Smith testified that Ferenec escorted him from the curb where he was sitting to Ferenec's patrol car by hiking his

16

hands up behind his back and pushing him forward, despite the fact that Smith did not resist. Smith Dep. 41:18-45:23. When the two reached the patrol car, Ferenec lifted Smith off the ground and slammed his chin into the windshield without provocation. *Id.* Ferenec's testimony was unclear as to whether he hiked Smith's arms up behind his back. Ferenec Dep. 24:7-18. Ferenec also testified that Smith actively resisted Ferenec's attempt to lead Smith to the patrol car, and that Smith made an abrupt movement when they reached the patrol car, which is why Ferenec slammed Smith into the windshield. Ferenec Dep. 26:1-4, 34:23-35:24. In light of Smith's allegations, the conflicting testimony of Smith and the officers and the dash cam footage from Ferenec's car, a reasonable jury could find that Ferenec used excessive force on Smith without provocation, evidencing a malicious purpose, bad faith, or a wanton or reckless disregard for Smith's safety. As such, the Court denies summary judgment for Ferenec on Smith's Gross Negligence claim.

Smith also alleges Gross Negligence against Salgado. However, Smith does not allege in his Complaint that Salgado used any physical force but rather that he failed to intervene in the use of excessive force by Ferenec. Compl. ¶¶ 32-34. The contact between Ferenec and Smith lasted only a matter of seconds. Furthermore, Smith stated in his Complaint that Salgado arrived on the scene near the same time as Ferenec and thus, was not present to witness the alleged excessive force contact between Smith, Thompson and Gidich. Salgado testified that he did not witness the contact between Smith and Ferenec. Smith has also failed to specifically allege any facts which may demonstrate that Salgado acted maliciously, in bad faith, or wantonly and recklessly. As such, the Court grants summary judgment to Salgado on Smith's Gross Negligence claim.

**Is the City immune from liability for Smith's Negligent Retention and/or Supervising claim?**

Defendants assert that the City is immune from liability pursuant to R.C. Chapter 2744. Under this chapter, "we begin with the understanding that political subdivisions are not liable generally for injury or death to persons in connection with [the] performance of a governmental or proprietary function." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 3 (2008). There are five exceptions to this rule listed in R.C. 2744.03(B). *Meredith v. Cleveland Heights Police Dept.*, No. 93436, 2010 WL 2206405, at *2 (Ohio June 3, 2010). If any exception applies, "the burden shifts, and the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Id.*

The City is entitled to the presumption of immunity because at all times relevant, the City was a political subdivision performing the governmental function of policing. *See Meredith*, 2010 WL 2206405, at *3 (holding that providing police services is a governmental function). Therefore, the Court must determine whether any exception listed in R.C. 2744.03(B) applies. Those exceptions are: (1) negligent operation of a motor vehicle, (2) proprietary functions, (3) failure to repair roads, (4) defects in public buildings and (5) statutorily imposed liability. *Id.*, citing Ohio Rev. Code § 2744.03(B) (2018).

None of these exceptions apply in this case. Furthermore, Smith has made no attempt to argue that any specific exception applies. Therefore, the Court holds that the City is entitled to summary judgment on Smith's Negligent Retention and/or Supervising claim.

**Is Rivera entitled to immunity from Smith's Negligent Retention and/or Supervising claim?**

Ohio law presumes immunity for an employee of a political subdivision "[i]n a civil action... to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.03(A) (2018). An employee is immune from liability unless: (1) their acts or omissions were "manifestly outside the scope of [their] employment or official responsibilities," (2) they acted with malicious purpose, in bad faith, or wantonly or recklessly or (3) there is statutorily imposed liability.

Smith has not pleaded any facts or presented any evidence suggesting that Rivera's retention and supervising of the Defendant officers falls under any of the above-listed exceptions to immunity. Because Smith has not presented any such evidence or alleged that Rivera acted with malicious purpose, in bad faith or in a wanton or reckless manner, the Court holds that Rivera is entitled to immunity from Smith's Negligent Retention and/or Supervising claim. Therefore, the Court grants summary judgment to Rivera on this claim.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment in part and denies it in part. The Court grants summary judgment to Gidich and Thompson on Smith's § 1983 Excessive Force claim, to all Defendants on Smith's False/Wrongful Arrest/Imprisonment claim, to Salgado on Smith's state-law claim for Gross Negligence, and to the City and Rivera on Smith's state-law claim for Negligent Retention and/or Supervision claim. The Court denies summary judgment to Ferenec on Smith's § 1983 Excessive Force claim; to the City and Rivera on Smith's *Monell* claim for Customs and Policies Causing Constitutional Violations and to Thompson, Gidich and Ferenec on Smith's state-law claim for Gross Negligence.

IT IS SO ORDERED.

                                                  s/ Christopher A. Boyko
                                                  CHRISTOPHER A. BOYKO
                                                  United States District Judge

Dated: July 11, 2018